## VOORHEIS & MILLER
## v.
## HUGH L. BOVELL, ADMINISTRATOR.

*Administration—Action by Administrator—Set-Off—Recovery for Services—Evidence—Instructions.*

In an action brought by an administrator to recover for services of his intestate as manager of a store for a period of about six years before his

death, this court, upon a review of the evidence, which is conflicting, holds
that it sustains the judgment for the plaintiff.

[Opinion filed January 10, 1889.]

APPEAL from the Circuit Court of Clay County; the Hon.
C. C. BOGGS, Judge, presiding.

Messrs. WILSON & HUTCHINSON, for appellants.

Messrs. CALLAHAN & JONES, for appellee.

GREEN, P. J.   Bovell, administrator of the estate of Howard
B. Lutes, recovered a judgment in the court below for $2,000
against appellants for the services of Lutes as manager of their
store in Robinson, Illinois, for five years and about ten months;
to reverse this judgment appellant took this appeal.    In April,
1879, Lutes Bros. there failed and made an assignment.   The
assignee, by order of the County Court, sold, and the appel-
lants bought for $1,600 all the assets of the bankrupt firm,
which included stock of goods, notes, accounts, and also $613.10
cash collected by the assignee for goods sold by him from
the stock before appellants purchased.   This bankrupt estate
inventoried $4,837.45, and Lutes Brothers, at the time of the
assignment, owed appellants $3,033.90, on which debt the
assignee paid them a dividend of $617.40 out of the $1,600
received for said assets.   The stock of goods remained in the
store and plaintiff's intestate took charge of and managed the
business of appellants there up to the time of his death, in
March, 1885.   These goods were put in the stock by appel-
lants at a valuation of $3,120.95, and the firm is credited and
merchandise charged that amount therefor on the books.
Inasmuch as we find no error in modifying defendants' fourth
instruction, and no serious objection to the instructions given
for plaintiff to the jury, we have left for our consideration
but this one other question: Was the jury warranted by the
evidence in their finding for plaintiff?   It is insisted on behalf
of appellant that the evidence would not justify the jury in
finding appellee entitled to recover upon the *quantum*

*meruit* count in his declaration, but establishes the fact Lutes was to receive as full compensation for his services one-half of the net profits of the business he was managing, less balance due appellants from Lutes Brothers remain'ng unpaid after deducting $617.40 dividend paid them by assignee, and that the note of the intestate for $150 pleaded as a set-off and the amount drawn by him from the business as shown by the evidence, together amount to more than one-half the net profits less said balance, and hence his estate was indebted to appellants when this suit was brought. Without lengthening this opinion by a detailed statement 'of the account between the intestate and appellants as we think it ought to be stated, we are satisfied from the evidence, if Lutes' account is given the benefit of one-half the profits on the purchase of assets bought by appellants at a net cost of $986.81, and the benefit of correcting some errors in footings that appear in the accounts to his disadvantage, and allowing him $450 per year in addition to half the net profits, the verdict might be sustained even upon the theory that the compensation of Lutes was to depend upon the profits of said business; and we are further of the opinion the jury were justified by this evidence in finding for appellee on the *quantum meruit* count in his declaration.

The jury was furnished with evidence giving different versions as to the kind and character of compensation Lutes was to receive. For the appellants, Harper, testifying from his recollection of a conversation or conversations between Voorheis and Lutes the day after he sold the assets, says he understood Lutes was to manage the business, and was to have an equal interest in the profits thereof; from these profits the debt due appellants from Lutes Brothers, less dividend received, was to be paid, that his best recollection is, said debt was to be paid out of the profits from this purchase and the business generally.

Ferriman testified that Lutes, in a conversation with him in Cincinnati, in 1883, when witness was trying to sell him some goods, said he was managing the store, and Voorheis & Miller furnished the goods; he got half the profits and was allowed $450 a year to live on; that he did not know whether Lutes said the $450 was to be taken out of his share of the

profits, or whether he was to have that much in addition to his share of the profits.

Oliver testified that Lutes told him, in the fall of 1884, in the store at Robinson, in reply to the question, " How are you running the store?" " I am running it this way: I go to Cincinnati and select the goods; Voorheis & Miller pay for them; I bring the goods here and sell them, and out of the proceeds pay the expenses, and divide the profits by two, and I get one half."

The appellee, on his own behalf, testified, as administrator he called on appellant Miller, and asked for Lutes' account with the store, whereupon Miller gave him a written statement (read in evidence), in which Lutes was charged with the sums of money drawn by him during the years he was employed, and credited with *salary* for five years ten and a half months at $450 per year, and being then asked by appellee if that was the actual condition of Lutes' account, Miller replied: " Lutes has not a dollar interest in the store or in the profits;" and Miller, when called to rebut this testimony, admitted the truth of it. It thus appears the jury heard several versions of the kind and character of compensation Lutes was to receive. If Harper's evidence was relied on by itself, the jury might have found the compensation was to be half the profits, less the amount of a certain debt. From Ferriman's testimony they might have found Lutes was to receive half the profits and $450 a year; from Oliver's, that his compensation was to be one-half the net profits, and from appellee's testimony, Miller's admission, the written statement of account, and the fact that no credit is given in any account on the books to Lutes for a share of the profits during the whole time he was employed, the jury could just as fairly find the compensation of Lutes was not to be fixed upon the basis of profits. Miller, who presented the statement and made the reply to appellee, was then inquired of by one having a right to the information sought; he was called on to speak by one having a right to receive a true answer; he then had as full and accurate knowledge whether Lutes was to be compensated with a share of profits as Lutes had when he made the declara-

tion attributed to him, and if the jury chose to believe Miller's statement, fortified as it was by other circumstances, rather than Harper's understanding of the matter, or the declarations of Lutes to Ferriman and Oliver, we see no good reason why they might not do so. Miller, by the written statement, recognized the fact that Lutes was to have a salary, and did not claim the amount named was the sum fixed or agreed upon, but when asked if that was the actual condition of Lutes' account, merely answered, "Lutes has not a dollar interest in the store or in the profits." This would not, probably, have been his reply if the amount of the salary was agreed upon; hence the jury had the right to conclude that Lutes was to receive for his services such salary as appeared from the evidence they were reasonably worth, and find a verdict accordingly. This was done, and the verdict was for a sum not larger than the evidence warranted, after deducting from the salary earned the amount of all money drawn by Lutes.

We do not think the verdict should be disturbed, and the judgment is affirmed.

*Judgment affirmed.*